RECORD NO. 14-4573

In The

# United States Court of Appeals
## For The Fourth Circuit

# UNITED STATES OF AMERICA,

*Plaintiff – Appellee*,

**v.**

# IZELL DELOREAN GRISSETT, JR., a/k/a Buddy,

*Defendant – Appellant*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## AT COLUMBIA

————————

## BRIEF OF APPELLANT

————————

**David B. Betts**
ATTORNEY AT LAW
**276 Mariners Circle, Suite 201**
**Columbia, South Carolina  29212**
**(803) 407-6885**

*Counsel for Appellant*

**THE LEX GROUP** ♦ 1108 East Main Street ♦ Suite 1400 ♦ Richmond, VA  23219
(804) 644-4419 ♦ (800) 856-4419 ♦ Fax: (804) 644-3660 ♦ www.thelexgroup.com

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF SUBJECT MATTER
      AND APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ISSUE PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT

      The District Court Does Not Appear to Have Erred in Refusing to
      Grant Appellant's  Rule 29 Motions for Judgment of Acquittal  . . . . . . . . 12

      Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
      Legal Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

**CASES:**                                                          **PAGES**

*Anders v. California,*
      386 U.S. 738 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,6

*Glasser v. United States*,
      315 U.S. 60 (1942) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Burgos*,
      94 F.3d 849 (4th Cir. 1996) (en banc) . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Gallimore,*
      247 F.3d 134 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**STATUTES:**

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 922(g)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 924(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 924(c)(1)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 924(c)(1)(A)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 1951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 3231 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

18 U.S.C. § 3742(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 841(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

21 U.S.C. § 841(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATUTES (cont.):**                                                      **PAGES**

21 U.S.C. § 846 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**RULES:**

Rule 4(b),  Federal Rules of Appellate Procedure . . . . . . . . . . . . . . . . . . . . . . 1

## STATEMENT OF SUBJECT MATTER
## AND APPELLATE JURISDICTION

This is an appeal from a criminal judgment in the district court which had jurisdiction pursuant to 18 U.S.C. §§ 2, 922(g)(1), 924(c) (1), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii), 1951, and 3231.  Also 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846.   This Court has appellate jurisdiction pursuant to 18 U.S.C. § 3742(a), 28 U.S.C. § 1291 and Rule 4 of the Federal Rules of Appellate Procedure.

## ISSUE PRESENTED FOR REVIEW

Whether the District Court Erred When it Refused to Grant the Appellant's Rule 29 Motions for Judgment of Acquittal Based Upon Insufficiency of the Evidence.

## STATEMENT OF THE CASE

On our about February 19, 2013 Appellant Izell Delorean Grissett, Jr. a/k/a "Buddy" and a single co-defendant, Wayne Lamar Mobley a/k/a "Chicken Wing" were charged with various federal crimes  in a seven count indictment in the District of South Carolina.  Count One charged both with conspiracy to distribute and distribution of 5 kilograms or more of  cocaine and 280 grams or more of cocaine base ("Crack" cocaine) in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1) (A) and 846. Count Two  involved only Mobley and charged him with possession with intent to

1

distribute 500 grams of cocaine and 28 grams of crack cocaine on April 29, 2010 in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B). Count Three charged Mobley with possession of a firearm in furtherance of a drug trafficking crime on April 29, 2010 in violation of 18 U.S.C. § 924(c)(1)(A)(I). Count Four charged Grissett and Mobley with obstruction of commerce by means of robbery of cocaine from individuals engaged in narcotics trafficking on June 23, 2010 in violation of 18 U.S.C. §§ 1951 and 2. Count Five charged them both with using and carrying a firearm on June 23, 2010 during and in relation to and in furtherance of a drug trafficking crime as well as brandishing and discharging such firearms while committing such robbery all in violation of 18 U.S.C. §§ 924(c)(1), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii) and 2. Count Six charged Grissett with being a felon in possession of a firearm and ammunition on June 23, 2010 in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) and 924(e). Count Seven charged both Grissett and Mobley with jointly possessing with intent to distribute 500 grams or more of cocaine and a quantity of cocaine base ("Crack" cocaine) on June 23, 2010 in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 841(b)(1)(C).

Mobley entered into a plea agreement with the Government, plead guilty to Count One, the conspiracy count, and testified against Grissett during his five day trial in February, 2014. Tr. Tran. 70-72. Grissett was convicted on all five counts

2

against him.  Although Grissett was not charged with murder, a cross reference to the murder Sentencing Guideline, U.S.S.G. § 2D1.1(d)(1), subjected him to a guideline range of life in prison which is the sentence he received.   In addition he was sentence to an additional 10 years to run consecutive to his life sentence for his 924(c) conviction. Sent. Tran. 47.

Wayne Mobley was 24 at the time of trial and testified that he had bought crack cocaine from Grissett for a period of about six months about seven years previous to that when he, Mobley, was seventeen or eighteen.  He estimated the quantity of crack he bought from Grissett during that time to be at least a quarter kilogram, but less than two kilograms.  Tr.  Tran.  75.  After a period of not being involved together with drugs, Mobley testified that he and Grissett became partners and started buying cocaine together because he had the suppliers and Grissett had customers and could cook the cocaine into crack.  He estimated they bought at least 5, but less than 30 kilograms of cocaine together up to and including the robbery of their Mexican suppliers on June 23, 2010.  Tr.  Tran.  78.

Mobley testified that on June 23, 2010 he had picked Grissett up in the morning and they were killing time as well as selling drugs together when he received a call from their Mexican suppliers, the Trejos brothers, indicating they were ready for them to pick up the two kilograms of cocaine he had previously requested.  Tr.

3

Tran. 89. They went to his mother's house where he retrieved two black bags containing about $60,000. The price for the cocaine was $33,000 per kilogram so they were short and he planned to negotiate a lower price when they got to the Trejos' residence. Tr. Tran. 90. He also picked up two forty caliber pistols while at his mother's house putting one in one of the bags that he gave to Grissett and the other in his back pocket. Tr. Tran. 91-92. Grissett was driving to pick up the cocaine when he told Mobley they should just rob the Mexicans instead of paying for the drugs. Tr. Tran. 92. While driving Grissett asked Mobley to put a bullet in the chamber of the pistol in his bag which he did. Tr. Tran. 95.

When they arrived at the Trejos' residence they went inside where there were at least three other individuals with them in the kitchen. Tr. Tran. 101. One of the Trejos brothers brought two one kilogram packages of cocaine for them to test for quality by cooking nine grams into crack cocaine out of each package. Tr. Tran 102. One kilogram was a better quality than the other so Mobley got the Mexicans to agree to accept $28,000 for the one of lesser quality. Tr. Tran. 103-104. Mobley started to pull money out his bag to pay for the cocaine when Grissett pulled out his gun and started shooting and at least one person was shot. Tr. Tran. 105 & 107. Mobley then grabbed up his money, the cocaine and the small amount of crack they had cooked up and he and Grissett ran out of the residence. They both jumped into their

4

car with Grissett again driving, but he backed into a ditch and got the car stuck. Tr. Tran. 108. By this time somebody from the house was shooting at them and they both got out of the car and were returning fire. Tr. Tran. 109. Grissett grabbed one of the two kilograms of cocaine from the car, Mobley grabbed the money, and both took off running. Tr. Tran. 110. At some point Grissett gave Mobley the cocaine and they then got separated as they ran away and Mobley then hid the money, the cocaine and his gun planning to come back for it. Tr. Tran. 111. Which he did later that same day. Tr. Tran. 115. When confronted by Grissett, again later the same day, Mobley denied having retrieved anything. Tr. Tran. 116. Under cross-examination, Mobley indicated that at the time of the robbery he weighed only about 160 pounds while Grissett was much larger, weighing about 250 pounds. Tr. Tran. 134.

Joel Trejos testified that he started selling cocaine in about 2006. Tr. Tran. 165. In about February 2010 he met an individual he knew only as "Chino" who asked if Trejos could supply him with cocaine. Tr. Tran. 167. Soon after their first meeting, he began supplying cocaine to Chino and another man who always accompanied him that Trejos called the "Fat One" because he was so much bigger than Chino. Tr. Tran. 167. He said they had come to purchase drugs from him at his brother's house, on three to five different occasions and always purchased two

5

kilograms of cocaine at a time.  Tr.  Tran.  170.  He said "they", without specifying whether it was Chino or the Fat One, would call and place an order and he would make arrangement to have it delivered to him by his supplier from Texas.  He would call "them" when he got it which took between 15 and 20 days.  Tr.  Tran.  171-172.

Trejos further testified that on June 23, 2010 he called Chino and told him he was ready to deliver the cocaine that had previously been ordered.  Chino and the Fat One came to Trejos's brother's house where he showed them the two kilograms of cocaine which they tested by cooking some into crack.  Tr.  Tran.  174.  They were not satisfied with the quality so they negotiated the price down and Chino seemed satisfied and wanted to buy the cocaine, but the "fatter one" said no.  Tr.  Tran.  175. At that point the "fatter one" pulled a gun from his bag and shot Trejos's brother-in-law who had just come back into the room and was sitting  in a chair.  Tr.  Tran.  176. Trejos testified that Chino then ran outside and the "fatter one" grabbed the money and cocaine and also fired shots in the house at Trejos's brother, Jose and their Texas supplier, Jose Ortiz.  Tr.  Tran.  177.  Shooting continued outside and his brother was returning fire.  Chino and the "fatter one" got to their car, but wrecked it in the "canal",  then they jumped from the stuck car and ran off.  Tr.  Tran.  178.  Trejos called the police to report a  robbery, but at that time did not tell them it involved drugs and denied that he knew the men involved.  Tr.  Tran.  179.  In May 2011

6

Trejos was arrested on federal drug charges including those involved the robbery on June 23, 2010 and he pled guilty to conspiracy to possess and distribute 5 or more kilograms of cocaine. Tr. Tran. 180. During the trial, Trejos never identified Chino or the Fat One as being either Mobley or Grissett.

Jessica Williams testified that Grissett was the father of her son and was living with her at her mother's house on June 23, 2010. Tr. Tran. 6 & 14. Grissett got up early that day and left the house with someone who picked him up. Tr. Tran. 15. Late that afternoon, while she was shopping at Walmart, she received a call from Grissett urging her to come home quickly. Tr. Tran. 17. When she got there Grissett was in her bedroom, seemed upset and had scratches on his hands, arms and legs. Tr. Tran. 20. She did not ask what had happened and she, Grissett and their son went over to Grissett's parents' house, but shortly thereafter Grissett left on foot. Tr. Tran. 22. She then returned to her mother's house with her son and Grissett arrived a short time later. Tr. Tran. 23. Grissett then told her that he and Wayne Mobley had gone to purchase some drugs which he said was "Coke" and that things had "gone bad" with some Mexicans. Tr. Tran. 24 & 27. He told her there had been shooting, that they got the car stuck in a ditch and had to run for their lives through some woods. Tr. Tran. 24-25. He asked her to help him by cutting his dreadlocks which he had had for six or seven years and which where very long. Tr. Tran. 26.

Floyd Bouknight, who had previously plead guilty in an unrelated drug case, testified that during 2009 and 2010 he and Mobley were both buying cocaine from the same supplier and would help each other cook it into crack. They did five or six kilograms together and Grissett would help them. Tr. Tran. 262-63, 270. About a week after the robbery at the Trejos' residence, Grissett told Bouknight that he and Mobley had robbed the Mexicans. Tr. Tran. 273. He described how he, Grissett, had pulled out his gun, shot one of the Mexicans, grabbed the money and drugs and fled to the car, but then wrecked in the ditch. Tr. Tran. 274-76.

Rodriguez Mealing testified that he was a drug dealer and that Grissett worked for him starting in 2003 selling crack cocaine. Tr. Tran. 304-305. He estimated that between 2003 and 2007 he and Grissett were involved with at least 15 kilograms of crack cocaine and at least 50 kilograms of powder cocaine. Tr. Tran. 312-13. He said Grissett always carried a gun. Tr. Tran. 325. He also testified that about a week after June 23, 2010 Grissett admitted to him that he and Mobley had robbed their Mexican supplier, that he had pulled his gun and fired shots. Grissett also provided details of how they had grabbed the money and drugs, tried to flea in their car, but got stuck in a ditch and had to flee on foot. Tr. Tran. 323.

An investigator testified that shell casings found on either side of the car stuck in the ditch at Jose Trejos' residence were from a forty caliber weapon. Tr. Tran.

8

221.  An expert forensic chemist testified that the one package retrieved from the vehicle tested out as 986.6 grams of cocaine and another as 12.37 grams of crack cocaine.  Tr. Tran. 250-51.  A firearms expert testified that the shell casing found near the driver's side door on the car stuck in the ditch were fired by a Glock pistol.  Tr. Tran. 352.  And an expert in firearm interstate nexus testified that Glock pistols were not made in the state of South Carolina and therefore had to have traveled in interstate commerce.  Tr. Tran. 370.

Two stipulations were entered into by the Government and Grissett and submitted without objection to the jury.  First, at all relevant times including June 23, 2010 Grissett had a prior felony conviction.  And, second, if he had been called upon to testify, an ATF agent certified as an expert to determine the place of manufacture of firearms and ammunition and establishment of an interstate nexus would have testified that the bullets and shelling casing found at 725 Colleton (the Trejos' residence) on June 23, 2010 and submitted to the jury in the form of numerous specified exhibits, were made outside the State of South Carolina and therefore had traveled in and affected interstate or foreign commerce for purposes of 18 U.S.C. § 922(g).  Tr. Tran. 378-79.

The Government rested its case, Grissett moved for dismissal based upon insufficiency of the evidence and such motion was denied.  Tr. Tran. 380.  Grissett

then elected to take the stand in his own defense. He denied having any drug dealings with Wayne Mobley or ever going with him to buy drugs from the Mexicans. Tr. Tran. 411-12.

The defense rested without any other witnesses and the following day the Court noted that in the haste to adjourn the previous day no motion was made by the defense for judgment of acquittal, but it would "assume such motion had been made, and assuming it had been made I would have denied it." Partial Tran. 2/5/14. A charge conference was then conducted with all parties agreeing on the final charges to be given to the jury. Partial Tran. 2/5/14. No transcript of those charges being read to the jury was ordered, however, a copy was obtained from the docket sheets for this case and reviewed by counsel.

Late on the second day of deliberations the jury sent a note indicating it was at an impasse. With some minor changes, the parties agreed for the Court to give a so-called modified Allen charge which it did, but no verdict was reached after a half hour so the jury was sent home for the night. Tran. 2/6/14. The jury returned the following day and reached a verdict convicting Grissett on all five counts against him.

A presentence report (PSR) was prepared. Based upon proffer statements as well as trial testimony of numerous individuals Grissett was held responsible for 9,296.6 grams of cocaine and 504 grams of crack cocaine. PSR ¶ 52. In addition the

report indicated that two individuals in the residence at 725 Colleton had been shot on June 23, 2010 and one of them, Hector Carrion, died from his wounds three days later. PSR ¶ 12. The PSR held Grissett responsible for the murder of Carrion and applied the cross-reference to the sentencing guideline for murder thereby rendering the determinations of drug quantities inapplicable because the resulting sentencing guideline level was higher. PSR ¶ ¶ 78,87 & 94. For purposes of Counts One, Four, Six and Seven Grissett's total offense level was 43 which, with his criminal history of IV resulted in a guideline range of Life. As for Count five the statutory minimum was 10 years which had to be imposed consecutive to any other sentence. PSR ¶ 119.

Grissett filed objections to the PSR regarding the determination of drug quantities as well as the murder cross reference claiming there was no evidence he was guilty of murder. A sentencing hearing was conducted on July 9, 2014 and all objections were overruled after the Court heard extensive arguments and testimony from a police officer that investigated the shooting at the Trejos' residence on June 23, 2010 and confirmed that Hector Carrion was shot that day and died from the wound a few days later. Sent. Tran. 11 & 26. The PSR was then adopted as the findings by the Court. Sent. Tran. 27.

After hearing arguments in support of and mitigation of imposing a life sentence, the Court sentenced Grissett to life plus 10 years consecutive to life. Sent.

11

Tran. 47.  In accordance with this Court's *Kratsas* decision the Court then performed a proportionality analysis since a life sentence was imposed and concluded that a life sentence was justified.  Sent. Tran. 48.

 A single potential issue is raised in this appeal, however, the undersigned counsel has carefully reviewed transcripts from the trial and the sentencing hearing as well as the jury charges and the PSR and has found no meritorious issues for appeal.  As a result, this brief is filed in compliance with *Anders v. California*, 386 U.S. 738 (1967).

## SUMMARY OF THE ARGUMENT

There appears to have been substantial evidence, taken in the light most favorable to the government, to support the jury's verdict.

## ARGUMENT

The District Court Does Not Appear to Have Erred in Refusing to Grant the Appellant's Rule 29 Motions for Judgment of Acquittal Based Upon Insufficiency of the Evidence.

**Standard of Review**

The district court's decision to deny a motion for judgment of acquittal is reviewed de novo. *United States v. Gallimore*, 247 F.3d 134, 136 (4th Cir. 2001). If the motion was based on insufficiency of the evidence, the verdict must be sustained

if there is substantial evidence, taking the view most favorable to the government, to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942).

**Legal Argument**

"[S]ubstantial evidence is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (en banc).

With regard to Count One, the conspiracy count, the Court correctly instructed the jury:

> For you to find the defendant guilty of the crime charged in Count 1, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> (1) Two or more persons, directly or indirectly, reached an agreement to possess with intent to distribute or to distribute controlled substances;
> (2) The defendant knew of the unlawful purpose of the agreement;
> (3) The defendant joined in the agreement willfully; that is, with the intent to further its unlawful purpose; and
> (4) The overall scope of the conspiracy involved a quantity of a controlled substance (either cocaine or cocaine base).

Jury Instructions p. 13.

Wayne Mobley testified that he and Grissett were partners, that they purchased large quantities of cocaine together, cooked it into cocaine base (crack) and sold it to customers. Tr. Tran. 77-78. Floyd Bouknight testified that he and Mobley along with Grissett's help had cooked 5 to 6 kilograms of cocaine into cocaine base. Tr. Tran. 270. Rodriguez Mealing testified that he was a drug dealer and that Grissett worked for him selling drugs starting in 2003. Tr. Tran. 305. He claimed that between 2003 and 2007 he and Grissett had cooked a minimum of 15 kilograms of crack cocaine. Tr. Tran. 311.

Regarding the elements to convict under Count Four, the robbery count, the jury was instructed:

> To sustain its burden of proof for the crime of obstructing, delaying, or affecting interstate commerce by robbery as charged in Count 4 of the indictment, the government must prove the following three essential elements beyond a reasonable doubt:
>
> > (1) The defendant induced individuals to part with property, specifically, cocaine;
> > (2) The defendant did so knowingly and deliberately by robbery; and
> > (3) In so acting, interstate commerce was obstructed, delayed, or affected.
>
> > > \*\*\*
>
> Drug dealing is an inherently economic enterprise that affects interstate commerce. For this reason, the robbery of a drug dealer is

14

the kind of act which satisfies the "affecting commerce" element of
the federal law, inasmuch as such a robbery depletes the assets of the
drug dealer.

Jury Instructions pp. 13-14.

Mobley testified that the Trejos brothers supplied he and Grissett with

cocaine and while negotiating the price for two kilograms of cocaine at their

residence on June 23, 2010 Grissett pull his gun and started shooting at the

suppliers. He and Grissett then grabbed the packages of cocaine and ran with it

from the residence without paying for it. Tr. Tran. 106-07. Joel Trejos testified

that he was a drug dealer and on June 23, 2010 he was in the process of selling

two kilograms of cocaine to individuals known to him as "Chino" and the "Fat

One" when the Fat One pulled a gun, shot his brother-in-law and the two fled the

residence taking their money with them along with his two kilograms of cocaine.

Tr. Tran. 175-77.

Regarding Count Five, the 924(c) count, the jury was told:

To sustain its burden of proof for the crime of using or carrying a
firearm during and in relation to a crime of violence or a drug
trafficking crime or possessing a firearm in furtherance of a crime of
violence or a drug trafficking crime as charged in Count 5 of the
indictment, the government must prove the following two essential
elements beyond a reasonable doubt:

(1) The defendant committed the crime of robbery or a drug
trafficking crime as charged in the indictment; and

15

(2) The defendant knowingly used or carried a firearm during and
in relation to the commission of, or that the defendant
knowingly possessed a firearm in furtherance of, the crime
charged in Counts 1, 4 or 7.

If you find that the government has proved, beyond a reasonable
doubt, that these two elements have been provided (thus finding the
defendant guilty of Count 5), then you need to also determine whether
the government has proved, beyond a reasonable doubt, one or both
of two aggravating factors charged in the indictment. These
aggravating factors are:

(A) Brandishing the firearm. The "brandish" means to display all or
part of the firearm or otherwise make the presence of the firearm
known to another person in order to intimidate that person,
regardless of whether the firearm is directly visible to that
person; and
(B) Discharging the firearm. To "discharge" means to actually pull
the trigger and cause the projection of the bullet.

Jury Instructions pp 26-27.

As previously indicated, Mobley testified that Grissett pulled his gun on

June 23, 2010 during the drug transaction with the Trejos brothers and actually

shot one of the suppliers.

Regarding the felon in possession count, Count Six, the jury was instructed:

For you to find the defendant guilty of this crime, you must be
convinced that the government has proved each of the following
elements beyond a reasonable doubt:

(1) The defendant knowingly possessed a firearm or ammunition;
(2) That before the defendant possessed the firearm or ammunition,
the defendant had been convicted in a court of a crime

16

punishable by imprisonment for a term in excess of one year,
that is, a felony offense; and
(3) That the possession of the firearm or ammunition was in or
affecting commerce; that is, that before the defendant possessed
the firearm or ammunition, it had traveled at some time from
one state to another.

With regard to the second and third elements I have just described,
you will recall that the government and the defendant have entered
into a stipulation. Under the stipulation, it is not disputed that the
defendant was, at the times relevant to the indictment, a person who
had been convicted in a court of a crime punishable by a term of
imprisonment exceeding one year. It is also undisputed that the
ammunition had traveled from one state to another. The question of
whether the firearm had traveled in interstate commerce is in dispute
and is for you to decide.

Jury Instructions p. 32.

Mobley testified that he had supplied Grissett with a forty caliber pistol just

prior to the robbery on June 23, 2010 and that he had loaded the chamber of the

pistol with ammunition at Grissett's. Tr. Tran. 91-92. That while trying to flee

from the residence after the robbery Grissett was driving, but got their car stuck in

a ditch. Tr. Tran. 108. A firearms expert testified that the shell casings found

near the driver's side door on the car stuck in the ditch after the robbery were

fired by a Glock pistol. Tr. Tran. 352. And an expert in firearm interstate nexus

testified that Glock pistols were not made in the state of South Carolina and

therefore had to have traveled in interstate commerce. Tr. Tran. 370.

17

Finally, regarding the possession with intent to distribute count, Count

Seven the jury was instructed:

> Let me now explain to you the elements of possession with intent to distribute. To sustain its burden of proof for the crime of possession with intent to distribute a controlled substance as charged in Count 7 of the indictment, the government must prove the following three essential elements beyond a reasonable doubt that:
>
> (1) The defendant knowingly possessed a quantity of cocaine or cocaine base;
> (2) At the time of such possession, the defendant knew that the substance was cocaine or cocaine base; and
> (3) The defendant intended to distribute the cocaine or cocaine base.

Jury Instructions p. 36.

Mobley testified that on June 23, 2010 he and Grissett went to the Trejos's

residence to purchase or steal two kilograms of cocaine which they intended to

cook into crack. That while fleeing from the scene Grissett grabbed a one

kilogram package of cocaine from their car and later gave it to him while they

were running away. Tr. Tran. 110.

The testimony appears to provide substantial evidence, which, if believed by

a jury, would support the jury's verdict in this case. Accordingly, the district court

does not appear to have erred when it refused to order a judgment of acquittal.

18

# CONCLUSION

The district court does not appear to have committed reversible error regarding either Appellant's conviction or sentence. While counsel is of the opinion that there are no meritorious issues for appeal, and therefore files this brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), he urges the Court to review the record carefully for possible error he may have overlooked. He is of course prepared to explore further any potential issue which may be brought to his attention.

Respectfully submitted this 21st day of November, 2014.

**LAW OFFICES OF
DAVID B. BETTS**


/s/David B. Betts
David B. Betts, Fed. Id. No. 1324
Attorney for the Appellant
276 Mariners Circle–Suite 201
Columbia, SC 29212
Phone:  (803) 407-6885
Fax:     (803) 749-3037
E-mail: Bettslaw@sc.rr.com

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 14-4573                    Caption: United States v Izell.Delorean Grissett, Jr.

### CERTIFICATE OF COMPLIANCE UNDER FED. R. APP. P. 32(A)(7)

COUNSEL MUST COMPLETE AND INCLUDE THIS CERTIFICATE IMMEDIATELY
BEFORE THE CERTIFICATE OF SERVICE FOR ALL BRIEFS FILED IN THIS COURT.

1.      This brief was prepared using (SELECT AND COMPLETE ONLY ONE):

    **X**    Fourteen point, proportionally spaced, serif typeface (such as CG Times or Times
            New Roman).  Do NOT use sans serif typeface such as Arial or any font which does
            not have the small horizontal or vertical strokes at the ends of letters).  Specify
            software name and version, typeface name, and point size below (for example,
            WordPerfect 8, CG Times, 14 point):
            WordPerfect X3, Times New Roman, 14 Point

    _____    Twelve point, monospaced typeface (such as Courier or Courier New).  Specify
            software name and version, typeface name, and point size below (for example,
            WordPerfect 8, Courier, 12 point):
            _____

2.      EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations;
        statement with respect to oral argument; any addendum containing statutes, rules, or
        regulations; and the certificate of service, the brief contains (SELECT AND COMPLETE
        ONLY ONE):
        X      19    Pages (give specific number of page; may not exceed 30 pages for
                opening or answering brief or 15 pages for reply brief); OR

        _____    Words (give specific number of words; may not exceed 14,000 words for opening
                or answering brief or 7,000 for reply brief)--Some word processing
                programs, including certain versions of Microsoft Word, do not automatically count
                words in footnotes, making it necessary to manually add the word count from
                footnotes to obtain the total word count; OR

        _____    Lines of Monospaced Type (give specific number of lines; may not
                exceed 1,300 lines for opening or answering brief or 650 for reply brief; may be used
                ONLY for brief prepared in monospaced type such as Courier or Courier New).

I understand that a material misrepresentation may result in the Court's striking the brief and
imposing sanctions.  If the Court so requests, I will provide an electronic version of the brief.

/s/ David B. Betts                                November 21, 2014
Signature of Filing Party                          Date

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Nancy C. Wicker, AUSA
William K. Witherspoon, AUSA

/s/ *David B. Betts*
David B. Betts, Fed. Id. No. 1324
Attorney for Appellant
276 Mariners Circle--Suite 201
Columbia, SC 29212
Phone: (803) 407-6885
E-mail: Bettslaw@sc.rr.com